Bell, J.
It is contended by Ford in this appeal that where there intervenes between an agency claimed to have created a hazard and an injury claimed to have resulted from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability.
The rule has been stated recently by this court as follows:
“Moreover, in the circumstances of this action the U-Drive-It Company may invoke the rule that, where there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency.” Thrash, a Minor, v. U-Drive-It Co., 158 Ohio St., 465, 110 N. E. (2d), 419.
Whether Ford may invoke the rule under the circumstances of this action requires a review of the voluminous and often contradictory testimony presented by the record. James E. Carr, driver of the Rogers outfit, was on the witness stand for a day and a half. Much of his testimony was ambiguous and contradictory, even to the extent that plaintiff, on whose behalf he was called, was permitted, under the guise of refreshing his recollection, to cross-examine him. From Carr’s testimony and that of others, however, certain facts bearing upon the question involved herein were established.
Forgings similar to the one which struck plaintiff were manufactured by Ford at its Canton plant and were packed by *327 Ford in pallet boxes manufactured by it from new wood. These boxes were loaded by Ford employees, under the direction and supervision of Rogers, onto a coupled semi-trailer and a full trailer leased by Rogers and operated by Carr. Carr designated the places on the outfit for the boxes to be placed, inspected the load, fastened his own chain binders over the pallet boxes and signed the bills of lading indicating his acceptance of the load for the carrier.
The normal Rogers route from Canton to River Rouge was over route 20. However, shortly after leaving Canton, Carr received a signal from another truck driver that State Highway Patrol truck scales were in operation that day at Hessville on route 20. Whereupon, Carr, who had permitted his outfit to be loaded with the maximum weight permitted by Michigan (apparently an overload under Ohio law), in order to avoid the scales deviated from his usual route to a route of his own choosing. This carried him over several minor roads to route 2 in the vicinity of Lorain. He continued over route 2 to Toledo.
It is conceded that, before the evening of the day in question, Rogers was the only carrier to leave Canton with a load of these particular forgings, and Carr was the only Rogers driver hauling forgings on route 2 that day.
For some 112 miles after leaving Canton, Carr experienced no difficulty with his load. But, while negotiating an “S” curve near Cedar Point and traveling at a speed of 45 to 50-miles an hour, Carr noticed some 15 or 20 forgings fall off his outfit, some of which hit the road and bounced as high as the telephone lines (12 or 13 feet). He did not stop at that time to pick up any of the forgings.
About a mile and a half beyond the point where he noticed that the forgings were falling onto the road, Carr stopped at Red Gables, a truck stop near the eastern city limits of San-dusky. There he inspected his load, found one broken box on the semi-trailer, and with the help of another Rogers driver attempted to repair the broken box. To accomplish the repair he knocked boards off two other pallet boxes, one located on the semi-trailer and the other on the full trailer, the latter box containing forgings similar to the one which struck the plaintiff, *328 added a third board which he was carrying on the semi-trailer, and nailed them onto the broken box.
After making these repairs, Carr continued on his journey to River Rouge. About seven miles west of Port Clinton he had a blowout and stopped to change wheels at the Fremont Oil Company in Port Clinton. The injury to plaintiff occurred about four miles east of Navarre Park (Toledo) at a point where the road was described as “awful rough.” Carr averaged 40 to 50 miles an hour over the stretch of road from Fremont Oil Company to Navarre Park.
At Navarre Park, Carr stopped and checked his load. At that time he found forgings, closely similar to the one found in plaintiff’s automobile, lying loose on the bed of the full trailer. The box containing these forgings was the one from which Carr had knocked a board to make the repairs at Red Gables.
We believe that a study of the entire record brings Ford within the rule of the Thrash case. Assuming, as we must on the theory presented here, that Ford was negligent in creating a hazard by its method of packing these forgings, we are of the opinion that Rogers was a responsible intervening agent which, after becoming conscious of the hazard, could and should have eliminated it, and by not doing so broke the chain of causation between Ford’s negligence and the injury.
Rogers, the common carrier, had exclusive possession and control of the load throughout the journey and had sole responsibility for its transportation. Rogers had actual knowledge of every claimed defect attributed to Ford and was solely responsible for its own willful attempt to correct those defects.
We are not impressed by the argument of plaintiff that Ford had been made aware of the fact that its forgings could slip out, and on previous occasions had slipped out, through the slats of the pallet boxes. Such prior occurrences might well have been the basis for Rogers’ refusal to accept this particular load until Ford had substituted a different and safer method of packing. But, having accepted the load, Rogers’ transportation thereof and its own attempt to remedy the defect relieved Ford of any responsibility it may originally have had.
*329 The judgment of the Court of Appeals is reversed, and the judgment of the Court of Common Pleas in granting the motion for judgment non obstante veredicto is affirmed.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Middleton, JJ., concur.
Middleton, J., of the Third Appellate District, sitting by designation in the place and stead of Taft, J., pursuant to Section 2, Article IV of the Constitution.